IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| Jim and Laurie Gibson, | : | |
| as next friends of Chloe Gibson, | : | Case No.: 1:11-CV-329 |
| | : | |
| Plaintiffs, | : | Judge: Susan J. Dlott |
| | : | |
| vs. | : | |
| | : | |
| Forest Hills Local School District | : | |
| Board of Education, | : | |
| | : | |
| Defendant. | : | |

## PLAINTIFFS' MOTION FOR ATTORNEYS' FEES

Pursuant to Fed. R. Civ. P. 54(d), S.D. Ohio Civ. R. 54.2, 20 U.S.C. § 1415(i)(3)(B)(i)(I), and this Court's order (ECF No. 41), Plaintiffs move the Court for an award of attorneys' fees incurred in pursuing the administrative process and claims before this Court in the amount of $848,220.00. Exhibit 1, Fees Statement. Plaintiffs were successful at several levels in this litigation resulting in a large amount of compensatory educational services for Chloe, two comprehensive evaluations, and several ordered changes to Chloe's educational programming for the future. In addition to the remedy ordered by the Impartial Hearing Officer in the administrative proceedings, this Court entered an order granting Plaintiffs' Motion for Transition Remedy (ECF No. 42) and awarded a comprehensive transition remedy for Chloe. As a prevailing party, Plaintiffs are entitled to an award of attorneys' fees under the IDEA and Fed. R. Civ. P. 54(d). Additionally, Plaintiffs request an award of fees reasonably incurred as a result of this motion. A memorandum in support is attached and incorporated by reference.

Respectfully submitted,

s/ Virginia Wilson

{00076468-9}

Virginia S. Wilson (0040466)
Trial Attorney for Plaintiffs
vwilson@disabilityrightsohio.org
Jason C. Boylan (0082409)
jboylan@ disabilityrightsohio.org
Ohio Disability Rights Law & Policy Center, Inc.
**DISABILITY RIGHTS OHIO**
50 W. Broad St., Suite 1400
Columbus, OH 43215-5923
Phone  (614) 466-7264
Fax       (614) 644-1888
Counsel for Plaintiffs

## MEMORANDUM IN SUPPORT

## I.    BACKGROUND

### A.    Due Process Hearing

Jim and Laurie Gibson filed an administrative due process complaint on behalf of their

daughter, Chloe (collectively "the Gibsons"), against Forest Hills School District Board of

Education ("Forest Hills") on December 14, 2009, after several years of attempting to resolve

these matters informally and through the state complaint process with the Ohio Department of

Education (ODE).[1]

When they were not able to get the services and evaluations their daughter needed

through the IEP and state complaint processes, the Gibsons filed a request for an impartial due

process hearing in accordance with the Individuals with Disabilities Education Improvement Act

("IDEA"), 20 U.S.C. § 1415 and Ohio Admin. Code 3301:51-05.  The Gibsons alleged, among

other things, that Forest Hills failed to provide proper transition assessments and services, an

assistive technology evaluation, and appropriate Individualized Education Program ("IEP") goals

that included academics and functional skills designed to lead to Chloe's increased independence

and future community-based employment opportunities.

The due process hearing began in May of 2010 and ended more than seven months later

after twenty-six hearing dates.  The due process lasted an equivalent of five consecutive weeks

based on the complex issues involved and, in part, difficulty in scheduling the hearing dates due

to summer vacation and witnesses' schedules.  The issues in the hearing were multifaceted and

---

[1]  The Ohio Department of Education ordered Forest Hills to comply with its 2007 Letter of Findings, which found multiple violations and awarded Chloe 90 hours of compensatory education for failure to provide a proper IEP, transition services, and parental participation.  Due Process Pet. Ex. KKKK.  Forest Hills ignored ODE's orders for a year until the Gibsons sought enforcement.  Due Process Pet. Ex. W, p. 4.  Two years after the state complaint was first filed and after yet another challenge by Forest Hills, ODE confirmed the previous Letter of Findings and found that Forest Hills continued to be out of compliance with the IDEA.  *Id.*, p. 17.

{00076468-9}

interrelated, and this, coupled with the fact that hearings were held largely on nonconsecutive days, caused considerable difficulty in maintaining consistency during testimony.  For example, the testimony of Plaintiff Laurie Gibson and Forest Hills witnesses Betsy Ryan and Susie Giesting were broken up several times to allow for the limited time schedule of other witnesses to testify.  Additionally, there were many schedule adjustments and changes throughout the hearing as efforts were made to work around the work schedules for all the parties and the availability of Forest Hills and outside witnesses, as well as the scheduled use of the room for the hearing.  Many of the witnesses were Forest Hills employees who were, in effect, examined and cross-examined twice, as witnesses for Forest Hills and adverse witnesses for the Gibsons.  In all, the parties examined 23 witnesses during the hearing with several being called multiple times throughout the process.  There were approximately 260 exhibits used in the hearing.  Given the topic complexity and sheer volume of the evidence, both parties had two attorneys present for nearly all of the hearing dates.

**B.** **Necessary Briefing During and After the Due Process Hearing.**

In addition to presenting testimony and evidence, there were a number of issues raised by Forest Hills during the hearing which required the parties to argue and file additional briefs for the IHO.  Forest Hills challenged the IHO's authority to hear and decide the Gibsons' Section 504 of the Rehabilitation Act and related IDEA claims, and the IHO requested that the parties file briefs during the hearing regarding those issues.[2]

The Gibsons had also requested an independent educational evaluation (IEE) at Forest Hills' expense to assess Chloe's transition needs prior to the commencement of the hearing; a

---

[2] "A plaintiff must exhaust administrative remedies before bringing suit to obtain relief that is available under the IDEA….  Moreover, Plaintiff may not avoid the exhaustion requirement of the IDEA by also stating claims under the Rehabilitation Act… if the Plaintiff's claims are also actionable under the IDEA." *Bishop v. Oakstone Academy*, 477 F.Supp.2d 876, 882-83 (S.D.Ohio 2007) (citations omitted).  The IHO decided the Gibsons' Section 504 claims to the extent that they related to the identification, evaluation, or education of Chloe.  SLRO Dec. p. 32.

claim in the due process hearing. Forest Hills initially agreed to the IEE and the Gibsons advised

the IHO that the issue was resolved. Forest Hills then decided, a week into the hearing, to deny

the requested IEE, arguing that Chloe was not entitled to an IEE because it had not yet conducted

a thorough transition assessment. This required the Gibsons to file a motion asking the IHO to

order Forest Hills to provide the transition IEE or order a transition evaluation for Chloe. The

IHO found during the hearing that the Gibsons had requested an independent vocational

transition assessment, the assessment was needed, and that Forest Hills had not provided a

thorough transition assessment. Tr. Vol. 6, p. 898-99. Consequently, the IHO ordered that

Forest Hills pay for the independent vocational assessment for Chloe.

In addition to the briefing during the hearing, the parties submitted extensive post-hearing

briefs prior to the final IHO decision. The briefs consolidated testimonial evidence taken by 23

witnesses over 26 days of hearing with 260 exhibits, and incorporated 5,381 pages of transcript

for the IHO's review and decision.

## C.    Impartial Hearing Officer Decision.

In a broad-sweeping decision, the IHO ordered Forest Hills to overhaul Chloe's IEP,

ordered Forest Hills to provide a comprehensive transition evaluation through Goodwill and an

augmentative communication assessment, ordered Forest Hills to provide 480 hours of

compensatory education, and set specific parameters for Forest Hills to change Chloe's future

IEP goals and instruction.[3] IHO Dec. pp. 16-17. The IHO held that Chloe had been denied a

---

[3] The IHO ordered Forest Hills to rewrite Chloe's IEP goals to increase the expectations of her progress on her current bilateral hand and maneuverability goals, including specific safety instruction to increase her physical stamina and strength. Forest Hills was ordered to develop an IEP goal designed to decrease prompt dependency in all aspects of Chloe's education, and provide her with 40 minutes instruction each day on a new reading goal designed to increase reading fluency using a structured reading program. Forest Hills was ordered to develop a math goal for Chloe designed to increase money skills including counting and recognition of coins, including skills for making purchases, and spend at least 40 minutes per day on that goal. Finally, Forest Hills was ordered to procure an augmentative communication assessment, and then develop IEP goals, objectives, and related services to increase speech initiation and output based upon the results of that assessment.

FAPE for the full two years preceding the due process request, based upon the deficiencies in all of her IEPs during that two year period. IHO Dec. p. 16, ¶22. She found Chloe's IEP goals for the 2007-2008, 2008-2009, and 2009-2010 school years were inadequate in several respects and were not sufficiently challenging to move her forward. *Id.*, at ¶ 19. Thus, the Gibsons were successful in obtaining a ruling that Forest Hills denied Chloe a FAPE for the maximum amount of time available in due process complaints under the IDEA's two-year statute of limitations and obtained significant compensatory and prospective remedies for Chloe. *See* 20 U.S.C. § 1415(b)(6).

> ### D. Appeal to the State Level Hearing Officer.

While the Gibsons prevailed on a significant portion of the due process complaint and the IHO ordered that a comprehensive transition evaluation be conducted, she did not order any compensatory education or other remedy for Forest Hills' failure to provide appropriate transition assessments and services for the two years at issue in the due process. The Gibsons believed that transition instruction was very central to Chloe's future community involvement, and failure to have these services would significantly limit her opportunities. Since the IHO-ordered Goodwill evaluation alone did not afford Chloe any transition services or instruction, the Gibsons appealed the IHO's failure to award compensatory education for, among other things, transition planning and services. The Gibsons also raised claims regarding the failure of Forest Hills to include the Gibsons' input, including Chloe's interests and preferences in her educational planning, its failure to provide appropriate assistive technology services, and to ensure Chloe was educated in the least restrictive environment because they felt these were all closely related to Chloe's needs for purposeful and meaningful transition planning and services.

Forest Hills did not appeal any issues to the SLRO. However, in its reply brief to the SLRO, Forest Hills raised for the first time new challenges to the IHO-ordered compensatory

education and IEP revisions. These appeal issues were clearly outside the scope of the Gibsons'

appeal issues and were untimely as Forest Hills had not exhausted its administrative remedies on

those claims. Forest Hills' reply raising these issues required the Gibsons to spend additional

time to brief a response that addressed these issues. In an August 15, 2011 decision, the SLRO

upheld the IHO decision that granted the Gibsons substantial relief, ruled in favor of Forest Hills

on the transition and related issues appealed by the Gibsons, determined that under the IDEA the

issue of whether the Gibsons were the prevailing party was to be determined by the courts, and

appropriately refused to rule on appeal issues that Forest Hills had raised for the first time in its

reply brief to the SLRO. SLRO Dec. pp. 23, 33.

     **E.**     **Fees Petition in Federal Court.**

Based upon their success in the IHO decision  and in light of Forest Hills' failure to

timely appeal the IHO's order, the Gibsons filed a fees complaint in this Court in accordance

with 20 U.S.C. § 1415(i)(3)(B)(i)(I) on May 19, 2011 to preserve their right to attorney fees as a

prevailing party. ECF Nos. 1-2 and 3.

     **F.**     **Forest Hills' Complaint in Federal Court and the Gibsons' Counterclaims.**

Forest Hills filed a separate complaint in this Court on September 13, 2011, arguing that

the SLRO improperly failed to address the issues it raised in its reply brief at the SLRO level.

Case No. 1:11-cv-628, ECF No. 1. The Court, at the request of the Gibsons and with agreement

by Forest Hills, consolidated the Gibsons' fees petition with Forest Hills' complaint. ECF No.

17. Because Forest Hills had not exhausted its administrative remedies by appealing the IHO

decision to the SLRO, the Gibsons filed a motion to dismiss Forest Hills' claims improperly

brought before this Court, (Case No. 1:11-cv-628, ECF No. 2), and filed counterclaims to Forest

Hills' complaint including the very significant issue of an appropriate transition remedy. Case

No. 1:11-cv-00628, ECF. No. 10. Forest Hills filed a response to the Gibsons' motion to

dismiss. Case No. 1:11-cv-628, ECF No. 6.  The Gibsons replied to Forest Hills' response.  ECF No. 18.  The Court then granted the Gibsons' motion, dismissing all of Forest Hills' claims leaving only the Gibsons' counterclaims and fee complaint for review by this Court.  ECF No. 20.

**G.      Federal Briefing and This Court's Decision on the Gibsons' Affirmative Claims.**

At the May 17, 2012 status conference to set a briefing schedule, the Court specifically requested that for the briefing on the issues, the parties err on the side of extended explanations of the complex special education-specific IDEA law and issues appealed in this case.  The Gibsons filed an extensive merit brief which outlined special education history, theory, practices, and rationale, as well as a complete history of Chloe's education and issues for review.  ECF No. 28.  Forest Hills submitted an extensive merit brief as well, (ECF No. 31) raising issues that required the Gibsons to file a response.  ECF No. 34.

On June 11, 2013, the Court issued an order affirming in part and reversing in part the SLRO's decision.  ECF No. 35.  The Court found that Forest Hills had failed to appropriately assess Chloe's transition needs and develop appropriate transition goals based upon those assessments, and failed to include Chloe in developing her postsecondary transition goals, resulting in a substantive harm and denial of a free and appropriate public education ("FAPE").  As part of that decision, the Court ordered a conference with the parties on the remedy as the Court did not have sufficient information to construct an appropriate remedy.

**H.      Remedy Briefing and Expert Report.**

After an unsuccessful attempt by the parties to settle the remedy, the Court provided the Gibsons the opportunity to file a motion for a remedy and scheduled agreed upon deadlines for the parties to submit briefs, request an evidentiary hearing, offer expert evidence, and provide

their arguments and information to the Court as to an appropriate transition remedy for Chloe. ECF No. 39. The Gibsons timely filed a motion for a transition remedy with a proposed remedy supported by an individualized expert evaluation with recommendations for Chloe. ECF No. 42. Forest Hills responded by opposing the Gibsons' proposed remedy and provided a report by a neuropsychologist along with his recommendations. ECF No. 43. The Gibsons replied to Forest Hills' brief on the remedy. ECF No. 44. Forest Hills then filed a motion for an evidentiary hearing. ECF No. 45. The Gibsons filed a response in opposition to Forest Hills' request for an evidentiary hearing, arguing that the request was untimely and unnecessary as the Court had sufficient information to fashion an appropriate remedy. ECF No. 46. Forest Hills replied to the Gibsons opposition to an evidentiary hearing. ECF No. 48. The Court denied Forest Hills' motion for a hearing on the remedy, finding that it already had sufficient information to order a remedy. ECF No. 50.

On February 11, 2014, the Court ordered a remedy for Chloe Gibson which included 590 hours of compensatory transition services including vocational instruction, job coaching and transportation, and also required Forest Hills to pay for the cost of the expert evaluation needed to determine an appropriate remedy for Chloe. ECF No. 49. The Gibsons now seek an award of attorneys' fees incurred in the course of this more than four-year litigation.[4]

## II.    LAW AND ARGUMENT

### A.    The Gibsons Are Entitled to an Award of Attorneys' Fees Under the IDEA and Fed. R. Civ. P. 54(d) Because They Are the Prevailing Party.

The IDEA and Fed. R. Civ. P. 54 entitle the Gibsons to an award of attorneys' fees in this action. The attorneys' fees provision of IDEA states: "[i]n any action or proceeding brought under this section, the court, in its discretion, may award reasonable attorneys' fees as part of the

---

[4] The Gibsons' counsel calculated the amount of time spent in nine different stages of this case, which also shows the percentage of time deducted for billing judgment per stage. *See* Ex. 1, p. 2, Summary of Time by Stage of Case.

costs-- . . . (I) to a prevailing party who is the parent of a child with a disability." 20 U.S.C. § 1415(i)(3)(B)(i)(I). Since this lawsuit originated under the IDEA and the IDEA contemplates an award of attorneys' fees to a prevailing party who is the parent of a child with a disability, the Gibsons may properly seek attorneys' fees from Forest Hills as the prevailing party in this action.

The Sixth Circuit applies the *Buchannon* "prevailing party" standard in IDEA cases where plaintiff-parents seek attorneys' fees from school districts as prevailing parties. *See*, *Tompkins v. Troy Sch. Dist.,* 199 Fed. App'x 463, 466 (6th Cir. 2006) (the court applied the *Buchannon* analysis when determining whether the parents were eligible for attorneys' fees under IDEA as prevailing parties); *see also*, *B.H. v. West Clermont Bd. of Educ.*, 788 F.Supp.2d 682, 702 (S.D. Ohio 2011) (the court granted an attorneys' fee award to parents as prevailing parties citing the *Buckhannon* standard). Under *Buckhannon*, a party is a prevailing party where (1) it receives "at least some relief on the merits of [its] claim," and (2) there is a "judicially sanctioned change in the legal relationship of the parties." *Buckhannon Bd. & Care Home, Inc. v. W. Virginia Dep't of Health and Human Res.* 532 U.S. 598, 603 (2001) (abrogated on other grounds).

In this case, Chloe Gibson has been awarded a combined total of 1,070 hours of compensatory education, received two comprehensive educational assessments and payment for the updated transition assessment necessary for the court to fashion an appropriate transition remedy, and obtained several court-ordered significant prospective changes to Chloe's IEP and educational programming.[5] Undoubtedly, the IHO and Court orders have resulted in excellent relief for Chloe and has materially altered the legal relationship between the parties.

---

[5] In addition, the Gibsons have prevailed on two separate state complaint decisions with ODE: the first is outlined in footnote 1 above; the second was to enforce the remainder of the compensatory education and evaluations ordered by the IHO. ECF No. 44, Ex. 6, November 2013 ODE Letter of Findings. Time litigating these state complaint actions has been excluded from this request for attorney fees.

The Gibsons are also entitled to an award of additional attorneys' fees incurred as a result of the instant motion.  *See*, *Keene v. Zelman*, 2008 WL 2202011, *1 (S.D. Ohio May 23 2008) citing *Kaseman v. District of Columbia*, 444 F.3d 637, 640 (D.C. Cir. 2006) (noting the general rule that the court may award additional fees for time reasonably devoted to obtaining attorneys' fees).  The Gibsons must request attorneys' fees via motion under Rule 54(d); therefore, they are also entitled to recover fees for the time spent presenting this motion to the Court.  If the Court grants this motion, the Gibsons will supplement the record to include contemporaneous time records for time spent on this motion.

### B.    The Gibsons' Request for Attorneys' Fees is Reasonable.

After determining whether a party is entitled to fees, a court must then determine whether the fees are reasonable.  *See*, *Paschal v. Flagstar Bank*, 297 F.3d 431, 434 (6th Cir. 2002) citing *Reed v. Rhodes*, 179 F.3d 453, 471 (6th Cir. 1999).  A reasonable award is calculated based on the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate.  *Hensley v. Eckerhart,* 461 U.S. 424, 433 (1983).  In calculating this "lodestar" amount, the prevailing party should exercise billing judgment to exclude from the fee request hours that are excessive, duplicative, or otherwise unnecessary.  *Id.* at 434.  There is a strong presumption that the lodestar amount is a reasonable fee to be awarded to prevailing parties.  *See*, *Blanchard v. Bergeron*, 489 U.S. 87, 95 (1989) citing *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986); *Women's Med. Prof'l Corp. v. Baird*, No. 2:03cv162, 2003 WL 23777732, (S.D. Ohio, Dec. 15, 2003).

### 1.    The Gibsons' attorneys' rates are reasonable.

The Gibsons' attorneys' rates are reasonable given the experience of counsel and the complexity of the issues raised in this case.  To determine a reasonable rate, courts look to the prevailing market rate, defined as the rate of lawyers with comparable skill and experience.

*Northeast Coal. for the Homeless v. Brunner*, No. 2:06-CV-896, 2010 WL 4939946, *7 (S.D. Ohio Nov. 30, 2010) citing *Geier v. Sundquist*, 372 F.3d 784, 791 (6th Cir. 2004); *see also*, 20 U.S.C. § 1415(i)(3)(C). "'In determining the reasonable rate, the Court has the discretionary authority to consider a party's submissions, awards in analogous cases, and its own knowledge and experience from handling similar requests for fees.'" *Northeast Coal. for the Homeless*, 2010 WL 4939946, *7, citing *Project Vote v. Blackwell*, 1:06-CV-1628, 2009 WL 917737,*5 (N.D. Ohio, Mar. 31, 2009) (internal citations omitted).

For attorneys who have no private practice, the rates customarily charged in the community for similar services can be looked to for guidance. *See Eggers v. Bullett City Sch. Dist.*, 854 F.2d 892, 899 (6th Cir. 1988) (attorneys for publicly funded state agencies are entitled to reasonable fees at fair market value); *Blum v. Stenson*, 465 U.S. 886, 895 (1984) (attorneys for a non-profit legal services organization are entitled to reasonable fees at prevailing market rates).

The Gibsons' fee request is based on billing rates that have applied to the Gibsons' counsel in past litigation and are comparable to rates customarily charged in the community by lawyers with similar background, skill level, and experience. *Mooneyhan v. Husted*, No. 3:12-cv-379, ECF No. 22, Decision and Entry Sustaining Plaintiff's Motion for Attorneys' Fees and Costs (S.D. Ohio, March 29, 2013) (attached as Exhibit 2). In 2010, this Court determined reasonable rates for attorneys and staff at the Ohio Legal Rights Service, now Disability Rights Ohio.[6] *See*, *Doe v. State of Ohio*, No. 2:91-cv-464, ECF No. 193 (S.D. Ohio July 19, 2010) (Order attached as Exhibit 3) approving rates for attorneys and staff at Disability Rights Ohio). For two years, the billing rates for attorneys and paralegals at Disability Rights Ohio remained

---

[6] On October 1, 2012, Ohio Legal Rights Service became Ohio Disability Rights Law and Policy Center, Inc., a not for profit corporation doing business as Disability Rights Ohio, and with a mission to advocate for the human, civil, and legal rights of people with disabilities in Ohio. Disability Rights Ohio replaced Ohio Legal Rights Service as Ohio's Protection and Advocacy (P&A) system and Client Assistance Program (CAP).

the same as the rates approved by this Court in 2010.  *See* Exhibit 4, ¶ 15-16, Declaration of

Kerstin Sjoberg-Witt.  In October 2012, as Ohio Legal Rights Service became Disability Rights

Ohio, a new not for profit corporation designated to replace Ohio Legal Rights Service as the

protection and advocacy system for people with disabilities in Ohio, billing rates increased to

adjust for inflation and the ever-increasing complexity of litigation in which attorneys at

Disability Rights Ohio engage.  *Id.* at ¶ 16.  The rates set by Disability Rights Ohio in October

2012 for attorneys and paralegals were upheld by this Court in a 2013 order granting all attorney

fees requested.  *Mooneyhan v. Husted*, No. 3:12-cv-379, ECF No. 22, Decision and Entry

Sustaining Plaintiff's Motion for Attorneys' Fees and Costs (S.D. Ohio, March 29, 2013).

The Gibsons are entitled to a fee award based on the current rates for Disability Rights

Ohio attorneys and paralegals.  Both the Supreme Court and the Sixth Circuit have found that an

adjustment for delay of payment in complex civil rights cases by applying current rather than

historical rates is appropriate.  *Missouri v. Jenkins,* 491 U.S. 274, 283-284 (1989) (agreeing "that

an appropriate adjustment for delay in payment—whether by the application of current rather

than historical hourly rates or otherwise—is within the contemplation of the [fees] statute"),

*Barnes v. City of Cincinnati*, 401 F.3d 729, 746 (6th Cir. 2005) (affirming district court's grant

of fees based on current rates for services rendered for the nearly six years of litigation).  The

Gibsons initiated this matter in December of 2009.  Applying the current rate rather than

historical rates appropriately compensates the Gibsons' counsel for the legal services rendered of

the last four years of litigation.

Experienced practitioners before this Court and other courts in Ohio support the billing

rates set by Disability Rights Ohio as reasonable rates based on the expertise, litigation

experience, and type of work engaged in by the attorneys seeking fees in the instant matter.

"The rates sought by the counsel in this case are typical of those billed by attorneys of similar background and experience for this type of litigation in the relevant market, which in this case is the State of Ohio."  Exhibit 5, ¶ 31, Declaration of Franklin J. Hickman.  *See also, Oakstone Community School v. Williams*, No. 2:11-cv-01109, ECF Nos. 58 and 58-6 (S.D. Ohio, Oct. 12, 2012).

Additionally, special education law is a highly specialized practice area and there are few lawyers available to represent parents and students with disabilities in these matters. Consequently, the Gibsons appropriately sought representation from Disability Rights Ohio, an agency that specializes in litigation related to the rights of people with disabilities, including special education claims.  The trial attorney in this case, Virginia Wilson, has approximately 21 years of experience, and her practice has been devoted primarily to special education law for the past 11 years.  Co-counsel in this case, Jason Boylan, has six years of litigation experience devoted to disability-related issues, including special education.

Finally, Disability Rights Ohio properly assigned attorneys with the expertise and experience necessary to navigate a complex special education case such as this, and appropriately delegated tasks to ensure efficient representation.  Trial Attorney Virginia Wilson and co-counsel Jason Boylan conducted the bulk of the work in this matter.  Ms. Wilson charges a billing rate of $310 and Mr. Boylan has a billing rate of $250.  Supervising Attorney Kristin Hildebrant, with 25 years of litigation experience, provided guidance and strategy input at a billing rate of $310.  Director of Advocacy and Assistant Executive Director Kerstin Sjoberg-Witt also provided guidance on strategy and input on significant pleadings, at a billing rate of $270.  Work by the attorneys was capably supported by paralegals Christine Retherford, Laura Bordeau, and Amanda Danko who bill at a rate of $95 per hour, a rate previously determined

appropriate by this Court in *Doe*. Exhibit 3, pg. 9. Their involvement contributed to effective presentation and organization of the claims without unnecessarily utilizing experienced attorneys to perform support tasks. Together, these attorneys and paralegals offered a fully competent and experienced team that ensured a favorable outcome for the Gibsons.

The Gibsons utilized an appropriate team of lawyers and paralegals to carry out these tasks, and assigned tasks among staff to avoid incurring unnecessary fees. The attached affidavits and contemporaneous fee records show the staff involved and the types of tasks that were carried out. The accompanying declarations by all Disability Rights Ohio staff for whom fees are sought provide support for the Gibsons' counsels' experience and expertise. See attached exhibits: Ex. 4, Declaration of Kerstin Sjoberg-Witt; Ex. 6, Declaration of Virginia Wilson; Ex. 7, Declaration of Jason Boylan; Ex. 8, Declaration of Kristin Hildebrant; Ex. 9, Declaration of Christine Retherford; Ex. 10, Declaration of Laura Bordeau.

For these reasons, the Gibsons' rates are reasonable.

> **2.    The amount of time spent on the case was reasonable given the complexity and fact-intensive nature of the case, as well as the student's unique needs.**

Plaintiffs challenging a student's IEP have the burden of proof in IDEA cases. In order to meet their burden in this case, the Gibsons were required to prove that Chloe was denied a FAPE and was harmed by the Forest Hills' denial of FAPE. Proof in this case was made more complex because of the nature of Chloe's disabilities, the effect of those disabilities on her learning, and the numerous and inaccurate educational records presented in this case. In order to prove Chloe's current levels of functioning, her lack of progress, and the educational services needed to help prepare her for the future, the Gibsons had to present evidence in a multitude of areas of need, including evidence of needs which impacted Chloe's ability to make progress

toward meeting her postsecondary transition goals.[7]

Proving the elements necessary for a denial of FAPE for Chloe required presentation of a large number of educational documents created over several years, including evaluations, educational records, and testimony from a variety of witnesses. The Gibsons' counsel spent a great deal of time preparing and litigating the lengthy administrative process which lasted over a year and involved writing numerous briefs, motions, responses, and replies necessary to adequately address the issues and advance the case to end with a final comprehensive remedy for Chloe. The hearing and briefing at the IHO level took 1324.4 total hours after exercising billing judgment, and by the time this litigation reached this Court, the Gibsons' counsel had already spent hundreds of hours on research, drafting, correspondence, and meetings over a 5-year period to advance the case through the detailed administrative process.

Given the complexity and breadth of the case, the Gibsons have adequately satisfied their burden of submitting with this petition detailed time entries reflecting the work done by all attorneys and paralegals in obtaining a positive outcome and disposing of the Forest Hills' claims. *See, Paschal*, 297 F.3d at 434 (approving of billing entries that included detailed description of how the billed hours were spent); *Building Serv. Local 47 Cleaning Contractors Pension Plan v. Grandview Raceway*, 46 F.3d 1392, 1402 (6th Cir. 1995) (approving documentation as adequate where prevailing party submitted time entries that "included a date, description of the activity involved, the amount of time expended on such activity, and the total amount owed for that activity"). The Gibsons' billing records identify the work done with

---

[7] The Gibsons had to prove what educational services Chloe had been provided in the past several years and her lack of progress, which was not always clearly or accurately documented in Forest Hills' educational file on Chloe. The claims related to her needs for transition included all the academic and functional skills needed to help her transition to adulthood, including further education, employment, and skills for independent living. This task was further complicated because Forest Hills had not provided the necessary and appropriate assessments to address all of Chloe's needs, including assessments for transition and assistive technology.

sufficient detail to ensure that the lodestar has been reasonably calculated. These contemporaneously created time entries include the time expended on this case after review for accuracy and consistency among timekeepers and after the exercise of appropriate billing judgment to exclude time that is excessive, unnecessary or duplicative, to exclude work designated as work on clearly unsuccessful claims, and reducing time for travel to 50%. In fact, the Gibsons' request for fees was reduced by over $232,000 after the exercise of billing judgment leaving the reasonable fees requested in the Gibsons' petition.

> a) **The Gibsons were successful in obtaining an excellent outcome for Chloe, so they should be awarded a full recovery of fees.**

In determining the reasonableness of fees, the U.S. Supreme Court has explained that where a plaintiff has obtained excellent results, the attorneys should recover a fully compensatory fee. *Hensley*, 461 U.S. at 435. This normally encompasses all hours reasonably expended on the litigation. *Id.*

The Gibsons brought this case to obtain appropriate educational services to enable their daughter to develop the academic and functional skills she needed to successfully transition to adulthood. They successfully litigated a multifaceted IDEA complaint and achieved an excellent result including a ruling that Forest Hills denied Chloe a FAPE for two years, awards of a significant amount of hours of compensatory education, two comprehensive evaluations, and substantial IEP changes. This outcome conferred a significant benefit on Chloe because she was awarded compensatory and prospective services and supports with a transition focus which is individualized to her needs to help her meet her postsecondary educational goals and work towards becoming an active participant in her community.

First, the Gibsons were successful in proving that Chloe's IEPs for the two years at issue in the due process were inadequate and that she was denied a FAPE for those two years. IHO

Dec. p. 16. The Gibsons presented several claims related to Forest Hills' failure to provide Chloe a FAPE in their due process, and were successful in obtaining a ruling by the IHO that Forest Hills denied her a FAPE for two years at issue in the hearing based upon these inadequate IEPs.

Second, as a result of this litigation, Chloe was provided an excellent remedy that addressed most of the Gibsons' claims in the due process. She was awarded 480 hours of compensatory educational services for the academic deficits in her programming by the IHO and was ordered an additional 590 hours of compensatory transition services to provide her with appropriate transition services to make up for the services she was denied by Forest Hills. In addition to the large award of compensatory educational services, Forest Hills was ordered to provide Chloe with two comprehensive evaluations: a transition assessment and an augmentative communication assessment. The IHO also ordered a complete overhaul to Chloe's educational programming prospectively and ordered Forest Hills to rewrite her IEP goals to address specific areas of need, many of which, as discussed below, addressed the needs raised by the Gibsons in the less successful claims in the IHO's decision. This Court ordered Forest Hills to provide Chloe with much of the transition services requested by the Gibsons, including specific instruction in employability skills, related services such as transportation, job coaching services for Chloe, and case coordination to ensure Chloe's interests and preferences were considered in her compensatory transition programming. The Court also ordered Forest Hills to pay for the updated transition assessment obtained by the Gibsons to enable the Court to fashion an appropriate remedy. The Gibsons should be awarded a fully recoverable fee based upon the excellent success achieved as a result of this litigation.

     **b)**     **The Gibsons were successful in obtaining a remedy from the IHO and the Court even when the Court or IHO did not specifically "find" for them on their claims, and time spent on those claims involved the same evidence and witnesses to prove a denial of FAPE.**

Where it was possible to do so, the Gibsons' counsel took careful steps to exercise billing judgment so as to exclude time documented distinctly as time spent on unsuccessful claims. *See, Hensley*, 461 U.S. at 440 (holding that hours spent on unsuccessful claims that are "distinct in all respects from . . . successful claims . . . should be excluded"). However, some time spent on successful and unsuccessful claims was so highly intertwined with a successful claim, it was not distinct. For example, the  claim that Forest Hills denied Chloe a FAPE was intricately intertwined with virtually all of the Gibsons' claims. Therefore, the time spent pursuing claims that were related, and had a common core of facts, is properly included in the Gibsons' fee petition. *Barnes v. City of Cincinnati*, 401 F.3d 729, 745 (6th Cir. 2005), ("[S]uccessful and unsuccessful claims are deemed related when they involve a common core of facts are based on related legal theories or when counsel's time is devoted generally to the litigation as a whole, making it difficult to divide the hours expended") (internal citations omitted). This was especially true for claims about Chloe's transition needs as there was a common core of facts and related legal theories involved in presenting those claims. Virtually all of the Gibsons' evidence in the case was presented to prove that Forest Hills denied Chloe a FAPE for the two years prior to the hearing by failing to appropriately address her unique educational and functional needs and enable her to make educational progress, especially in the areas necessary for her to successfully transition to adulthood.

The IHO ultimately found that Chloe was denied a FAPE for the entire two years at issue in the case based upon the inadequacy of her IEP goals. IHO Dec. p. 16, ¶22. The claims raised by the Gibsons as to the various areas of need were necessarily intertwined with proving Chloe's

IEP goals, services, and supports were inadequate such that she was denied a FAPE. This was true even for those claims where the IHO did not specifically order compensatory relief. In fact, many of the claims that may appear at first blush to be unsuccessful were actually remedied to Chloe's benefit through the prospective relief ordered by the IHO and the Court. For example, the IHO dismissed the Gibsons' claims that Forest Hills denied Chloe a FAPE by failing to provide an assistive technology evaluation and to appropriately address her communication needs, and did not order compensatory education specifically for those claims. The IHO did, however, make a finding that the assistive technology assessment requested by the Gibsons was necessary, and then ordered Forest Hills to provide an augmentative communication assessment, develop goals and objectives, and provide related services based upon that assessment that addressed Chloe's need to increase her initiation and output of communication, which were the same areas of need raised and proved by the Gibsons. IHO Dec. pp. 13, 17.

Likewise, the IHO addressed many of the Gibsons' claims regarding independent living skills by ordering prospective relief to Chloe by adding specific goals that addressed areas of need raised by the Gibsons in the hearing. While the IHO declined to specifically find a violation of FAPE regarding a failure to provide appropriate services and goals to decrease Chloe's prompt dependency and increase her independence skills in the community, she ordered Forest Hills to prospectively address the same areas of independence needs raised by the Gibsons, such as ordering Forest Hills to develop new goals to increase Chloe's safety skills, increase coin identification, counting, and skills for making purchases, decrease prompt dependency in all aspects of Chloe's education, and increase Chloe's stamina and strength. IHO Dec. p. 17.

The Gibsons request fees for time spent successfully proving Chloe's IEPs were inadequate and denied her a FAPE, and this necessarily includes some time for less successful or unsuccessful claims that were unable to be clearly separated as they involved common facts and legal theories.  Where the Gibsons' counsel was able to identify a certain task or activity that was specifically related to a distinct claim on which the Gibsons did not prevail, time for those matters was deducted from the Gibsons' fee request.  For example, the Gibsons' counsel deducted from their fee petition time on tasks that were specifically geared toward researching issues related to enforcing ODE's order for compensatory services, as the Gibsons were not successful in that particular claim with the IHO.  Time records that specifically addressed researching and drafting sections of the Gibsons' briefs that related only to unsuccessful claims such as a denial of meaningful parental participation or violation of Section 504, were similarly deducted from the fees request.  All the remaining time was intertwined with work on successful claims and is appropriate for a fee award here.

### 3.     The Gibsons' exercise of billing judgment is reasonable.

As this case has begun its fifth year, the gross fees incurred total $1,080,291.00. However, in calculating the lodestar, the Gibsons' counsel have exercised billing judgment to exclude time that might be considered excessive, duplicative, or otherwise unnecessary.  The Gibsons now seek reimbursement of $848,220.00 in fees.

After the Gibsons' counsels' review of the time entries for this matter, billing judgment was exercised to exclude:  (1) 13 timekeepers who billed minimal time to this matter and potentially represent duplicative time; (2) all time related to ancillary matters, including time related to enforcing the IHO's order to provide the full amount of compensatory services and the augmentative communication assessment through the Ohio Department of Education; (3) any timekeeping that was deemed excessive, clerical, or duplicative; and 4) work that was distinct

and only for unsuccessful claims.  Additionally, time for travel to and from the hearing and other case related travel was reduced by half.

As a result, the Gibsons have eliminated approximately $232,000 in fees from this fee request in the exercise of billing judgment.  This adjustment represents a fair and reasonable reduction of hours in light of the multiple resources necessary to conclude this case.

## III.    CONCLUSION

For the reasons stated above, the Gibsons are entitled to attorneys' fees and costs in the amount of $848,220.00, and a reasonable amount for fees incurred for pursuing this motion.  If the Court grants this motion, the Gibsons will supplement with contemporaneous fee records for time spent on this motion.

Respectfully submitted,

s/ Virginia Wilson
Virginia S. Wilson (0040466)
Trial Attorney for Plaintiffs
vwilson@disabilityrightsohio.org
Jason C. Boylan (0082409)
jboylan@ disabilityrightsohio.org
Ohio Disability Rights Law & Policy Center, Inc.
**DISABILITY RIGHTS OHIO**
50 W. Broad St., Suite 1400
Columbus, OH 43215-5923
Phone  (614) 466-7264
Fax     (614) 644-1888
Counsel for Plaintiffs

**CERTIFICATE OF SERVICE**

I hereby certify that on March 28, 2014, the aforementioned *Plaintiffs' Motion for Attorneys' Fees* was filed electronically.  Notice of this filing was sent to counsel for Defendant Forest Hills School District Board of Education via operation of the Court's electronic filing system.


Respectfully submitted,

s/ Virginia Wilson
Virginia S. Wilson (0040466)