IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| Jim and Laurie Gibson, as next friends of Chloe Gibson, | : : : | Case No. 1:11-cv-329 |
| Plaintiffs, | : : | Chief Judge Susan J. Dlott |
| v. | : : | Order Granting Motion for Attorneys' Fees |
| Forest Hills School District Board of Education, | : : : | |
| Defendant. | : : | |

This matter is before the Court on Plaintiffs' Motion for Attorneys' Fees (Doc. 51). For the reasons that follow, the Court will **GRANT** the Motion and award attorney fees in the amount of $300,000.

**I.     BACKGROUND**

Chloe Gibson (DOB 12/16/1990) qualified as a student with disabilities as defined by the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1401, *et seq*.  Plaintiffs Jim and Laurie Gibson are her parents and legal guardians.  The Gibsons reside within the boundaries of the Defendant Forest Hills School District ("Forest Hills").  Forest Hills was required to provide special education and related services to Chloe pursuant to the IDEA and Ohio Revised Code Chapter 3323.

**A.     State Due Process Proceedings**

On December 14, 2009, the Gibsons filed an administrative due process complaint with the Ohio Department of Education against Forest Hills alleging that the school district had failed to provide Chloe with a free appropriate public education ("FAPE") for three school years.  A due process hearing took place before an independent hearing officer ("IHO") over the course of

1

more than twenty non-consecutive days from May 3, 2010 through December 6, 2010. (No. 1:11-cv-628, Doc. 2-2 at PageID 36.) On April 4, 2011, the IHO issued the IHO Decision. (*Id.* at PageID 35, 59.)

The IHO determined that Forest Hills had denied Chloe a FAPE for the two years preceding the due process complaint because of deficiencies in her individualized education plans ("IEPs"). She ordered Forest Hills to provide Chloe with 240 hours compensatory education in both reading and math to remediate the denial of FAPE. (*Id.* at PageID 50–51.) She further ordered Forest Hills to provide Chloe with an IEP reading goal "to increase reading fluency based upon a structured reading program" and a math goal "to increase number and money skills including counting, recognition of coins and skills for making purchases." (*Id.*) She also ordered Forest Hills to provide Chloe with an IEP goal "to decrease prompt dependency in all aspects of her education." (*Id.*) The IHO ordered that an assistive technology assessment be conducted for Chloe and that Forest Hills provide "goals, objectives and related services to increase [her] speech initiation and output based upon the results of that assessment." (*Id.* at PageID 47.)

The IHO, however, also ruled in favor of Forest Hills on many issues. The IHO concluded that Chloe's placement in the Anderson High School multiple-disabilities classroom was the appropriate least restrictive environment for Chloe. (*Id.*) She found that the Turpin High School life skills program requested by the Gibsons was not an appropriate placement for Chloe. (*Id.*)

Next, the IHO found that the Gibsons were not denied participation in the IEP process. (*Id.*) She also found that the Gibsons "failed to present evidence to demonstrate the necessity for a behavior plan or need for a goal for transitions." (*Id.*) Likewise, she concluded that Forest

Hills did not need to provide Chloe with an opportunity to engage in extracurricular activities in order to provide her a FAPE. (*Id.* at PageID 47–48.) She found that the Gibsons had not established that Forest Hills failed to compile sufficient data on Chloe's progress towards her goals, failed to provide access to Chloe's educational records, or withdrew services in retaliation for the Gibson's advocacy on Chloe's behalf. (*Id.* at PageID 48–50.) Finally, the IHO held that the Gibsons were not prevailing parties because, in simplified terms, "[t]hey bear some of the responsibility for [Forest Hills'] difficulty in creating an IEP and providing services to [Chloe]." (*Id.* at PageID 58–59.)

The Gibsons timely appealed the IHO Decision to a state level review officer ("SLRO") with the Ohio Department of Education. The SLRO issued the SLRO Final Decision on August 15, 2011 affirming in part and modifying in part the IHO Decision. (No. 1:11-cv-628, Doc. 2-5.) The SLRO determined that Forest Hills had offered Chloe a FAPE during the relevant time period except in the areas of reading and math. (*Id.* at PageID 183–85.) Specifically, she found that Forest Hills had provided Chloe with FAPE in all socialization, related services, transition services, and vocational services. (*Id.* at PageID 150.) She also determined that Chloe's placement in the multiple-disabilities classroom at Anderson High School had been educationally appropriate. (*Id.* at PageID 183.)

The SLRO concluded that Chloe had "received appropriate communication services during the two years prior to filing the due process request" and that Forest Hills's failure to conduct an assistive technology assessment did not constitute a denial of FAPE. (*Id.* at PageID 174.) The SLRO noted that there had been no finding of fact that an assistive technology device would benefit Chloe. (*Id.*)

The SLRO also determined that the IHO had erred to the extent that she had found that Forest Hills had to provide Chloe with a vocational assessment.  (*Id.* at PageID 174.)  She determined that Forest Hills had complied with the Ohio Administrative Code § 3301-51-07(H)(2)(b)(i) requirement to provide appropriate measurable post-secondary transition goals.  (*Id.* at 175.)  She stated that "[a]ll of the pertinent IEPs have included appropriate measurable post-secondary goals based upon age-appropriate transition assessments" and that the "appropriateness of the IEP team's goals in this area have been borne out by both Mr. Darland's assessment and that of Goodwill Industries."  (*Id.*)

In regards to other services, the SLRO concluded that the IHO had erred when she concluded that the IEPs failed to provide sufficiently challenging physical therapy and occupational therapy goals.  (*Id.* at PageID 176.)  "Each year the objectives for these goals had been appropriately updated and made more challenging to move [Chloe] forward."  (*Id.*)  Therefore, the SLRO concluded that Chloe had not been denied FAPE in the areas of physical therapy and occupational therapy.  The SLRO also determined that Forest Hills had not denied Chloe a FAPE insofar as decreasing prompt dependency was not included as an express goal on her IEPs.  (*Id.* at PageID 184.)  The SLRO found that "[d]ecreasing prompt dependency was a part of [Chloe's] educational program across all areas."  (*Id.*)

Next, the SLRO disagreed with the Gibsons' contention that the IEP team should have included a regular education teacher.  (*Id.* at PageID 179.)  She stated that there was no procedural violation because participation of a regular education teacher "would [not] have been relevant to [Chloe's] IEP" given that she only took one regular education class, the dance class.  (*Id.*)

4

Turning to the issue of parental participation in the IEP process, the SLRO determined that there was "overwhelming" evidence that the Gibsons had meaningful participation on the IEP team. (*Id.* at PageID 178.) The SLRO characterized the parents as adopting an "us vs. them" posture and as making "multiple and ever-changing requests." (*Id.* at PageID 178–79.) Finally, the SLRO agreed that the Gibsons were not prevailing parties for the purpose of awarding attorney fees. (*Id.* at PageID 182–83.) However, the SLRO did not reverse the IHO's order requiring Forest Hills to include specific reading and math goals in Chloe's future IEPs and requiring Forest Hills to provide Chloe with compensatory education in reading and math. (*Id.* at PageID 172, 183.) The SLRO stated in relevant part that "[Forest Hills] chose not to appeal the IHO decision and, thus, these assertions will not be reviewed." (*Id.* at PageID 172.)

**B.    Federal Judicial Proceedings**

The Gibsons initiated the instant case with this Court by filing a Complaint for Attorney's Fees (Doc. 3) on June 7, 2011, after the IHO Decision was issued but before the SLRO Final Decision was issued. The Gibsons asserted that they were prevailing parties and entitled to attorney fees. The IDEA provides that a Court, "in its discretion," may award reasonable attorney fees "to a prevailing party who is the parent of a child with a disability." 20 U.S.C. § 1415(i)(3)(B).

On September 13, 2011, after the SLRO Final Decision was issued, Forest Hills initiated a separate suit by filing a Complaint/Notice of Appeal (No. 1:11-cv-628, Doc. 1) asserting that it was an aggrieved party entitled to judicial review pursuant to the IDEA, 20 U.S.C. § 1415(i)(2)(A).[1] Forest Hills asserted that the SLRO had erred when she held that the IEPs

---

[1] The IDEA provides the right of federal judicial review of a state administrative decision:

> (2) Right to bring civil action
> (A) In general

5

which Forest Hills had implemented for Chloe were deficient in the areas of reading and math and when she awarded Chloe compensatory education in those subjects. (No. 1:11-cv-628, Doc. 1 at PageID 10.) The Gibsons responded by filing a Motion to Dismiss (No. 1:11-cv-628, Doc. 2) on the basis of failure to exhaust administrative remedies.

The Gibsons also filed a Counterclaim (No. 1:11-cv-628, Doc. 3) against Forest Hills. The Gibsons alleged in five counterclaims that the SLRO had erred to the extent that she did not require Forest Hills to provide Chloe with compensatory relief related to the following areas: (1) assistive technology; (2) transition services; (3) least restrictive environment; (4) denial of FAPE; and (5) denial of meaningful parental participation. (*Id.* at PageID 196–212.) The Gibsons also alleged that the SLRO had erred by not determining that they were entitled to attorney fees as the prevailing parties. (*Id.* at PageID 212.) The Court consolidated Case No. 1:11-cv-628 with this case on December 5, 2011. (Doc. 17.)

On April 10, 2012, the Court granted the Gibsons' Motion to Dismiss the Complaint filed by Forest Hills in Case No. 1:11-cv-628. (Doc. 20.) The Court held that Forest Hills had failed to exhaust its administrative remedies by failing to appeal to the SLRO the reading and math issues decided in Chloe's favor by the IHO. (*Id.* at PageID 86.) The Court, accordingly, dismissed Forest Hills's claims against the Gibsons. (*Id.* at PageID 87.)

On June 11, 2013, the Court issued an Order Affirming in Part and Reversing in Part the Final Decision of the State Level Review Officer ("Judicial Review Order") (Doc. 35) in regards

---

> Any party aggrieved by the findings and decision made under subsection (f) or (k) who does not have the right to an appeal under subsection (g), and any party aggrieved by the findings and decision made under this subsection, shall have the right to bring a civil action with respect to the complaint presented pursuant to this section, which action may be brought in any State court of competent jurisdiction or in a district court of the United States, without regard to the amount in controversy.

20 U.S.C. § 1315(i)(2)(A).

to the Gibsons' counterclaims appealing the SLRO Final Decision. The Court reversed the SLRO Final Decision only insofar as the Court concluded that Forest Hills had violated the IDEA by not providing Chloe with adequate transition services. (*Id.* at PageID 718–19, 735.) The Court found that Forest Hills had not otherwise deprived Chloe of FAPE and had not denied the Gibsons meaningful participation in the IEP process.

Thereafter, the parties disagreed as to the scope of an appropriate transition services remedy. The Court issued an Order on February 11, 2014 specifying that Chloe was to receive over 500 hours of transition services, including employment discovery services, training with a job coach, and services by a customized employment consultant. (Doc. 49 at PageID 977–81.) The Court also ordered that Forest Hills reimburse the Gibsons for the reasonable costs of Dr. Margaretha Vreeburg Izzo's services in performing a transition services assessment of Chloe. (*Id.* at PageID 980.) The Court-ordered remedy provided Chloe with approximately one-fourth of the total hours of services which the Gibsons had requested and did not provide for the assistive technology assessment or training which the Gibsons had requested. (Doc. 42 at PageID 755–56; Doc. 42-1 at PageID 778.)

**II.   ANALYSIS**

**A.   Gibsons' Fee Request Based on the Lodestar Calculation**

The Gibsons move for attorney fees as the prevailing parties. (Doc. 51 at PageID 984; Doc. 58 at PageID 1306, 1309.) The IDEA authorizes district courts to award attorney fees to prevailing parties. 20 U.S.C. § 1415(i)(3)(B). Forest Hills does not dispute that the Gibsons are prevailing parties for purposes of the IDEA attorney fees provision. (Doc. 53 at PageID 1237–38.)

The Gibsons' fee request is based on a lodestar calculation, the number of hours reasonably expended on litigation multiplied by a reasonable hourly rate. *See Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983) (explaining the lodestar calculation); *Phelan v. Bell*, 8 F.3d 369, 374 (6th Cir. 1993) (same). The lodestar calculation is said to produce "an award that *roughly* approximates the fee that the prevailing party would have received if he or she had been representing a paying client who was billed by the hour in a comparable case." *Perdue v. Kenny A.*, 559 U.S. 542, 551 (2010) (emphasis in the original). The lodestar usually is strongly presumed to yield a reasonable fee. *City of Burlington v. Dague*, 505 U.S. 557, 562 (1992). A reasonable fee is one which is adequate to attract competent counsel, but does not produce a windfall to attorneys. *See Gonter v. Hunt Valve Co., Inc.*, 510 F.3d 610, 616 (6th Cir. 2007). The lodestar method is readily administered and is objective, thus permitting meaningful judicial review. *Perdue*, 559 U.S. at 551–52. However, "the lodestar method was never intended to be conclusive in all circumstances." *Id.* at 553.

The Gibsons were represented by attorneys and paralegals from Disability Rights Ohio ("DRO") prior to and during the state due process proceedings and the federal litigation. The Gibsons request the following as reasonable attorney fees:[2]

---

[2] The table reflects additional deductions from the original fee award sought in the Motion for Attorneys' Fees. (Doc. 51 at PageID 1005.) The Gibsons asked attorney Franklin J. Hickman to review their fee request between the filing of the Motion for Attorneys Fees and the filing of the Reply brief. Hickman suggested that the Gibsons make the following adjustments to the hours requested to avoid unreasonable or duplicative billing: deduct 87.2 hours from Kristin Hildebrant's previous total of 122.9 hours; deduct 28.6 hours from Kerstin Sjoberg-Witt's previous total of 80.4 hours; deduct 102.5 hours from Amanda Danko's previous total of 396.4 hours; deduct 19.9 hours from Christine Retherford's previous total of 224.8 hours; and deduct 16.2 hours from Laura Bordeau's previous total of 30.9 hours. (Doc. 58-1 at PageID 1314–16; Doc. 51-1 at PageID 1007.)

The Court notes that it does not agree with the Gibsons' mathematic calculations. The calculation of Wilson's fee at PageID 1007 is incorrect. Also, Hickman's calculation of the total number of hours he deducted from the original fee request at PageID 1314–16 is incorrect.

| ATTORNEY FEES REQUESTED BY THE GIBSONS | | | |
|---|---|---|---|
| **DRO Attorney/Paralegal** | **Rate** | **Hours** | **Fee Amount** |
| Attorney Kristin Hildebrant | $310 | 35.7 | $11,067.00 |
| Attorney Virginia Wilson | $310 | 1540.9 | $477,679.00 |
| Attorney Kerstin Sjoberg-Witt | $270 | 51.8 | $13,986.00 |
| Attorney Jason Boylan | $250 | 995.2 | $248,800.00 |
| Paralegal Amanda Danko | $95 | 293.9 | $27,920.50 |
| Paralegal Christine Retherford | $95 | 204.9 | $19,465.50 |
| Paralegal Laura Bordeau | $95 | 14.7 | $1,396.50 |
| **Totals** | | 3137.1 | $800,314.50 |

The Gibsons contend that the fees requested reflect the exercise of billing judgment by the DRO attorneys. DRO excised more than 1,000 hours from their fee application. (Doc. 51-1 at PageID 1008; Doc. 58-1 at PageID 1314–16.) On the other hand, Forest Hills contends that the fees sought by the Gibsons remain "extreme[ly]" excessive even after the purported exercise of billing judgment. (Doc. 53 at PageID 1238.) Forest Hills suggests that DRO overstaffed the case, was inefficient in handling the case, and achieved only limited success. However, Forest Hills has not aided the Court by suggesting a reasonable fee award or a process for calculating a reasonable fee.

It is the Court's duty at this time to calculate reasonable attorney fees and to set forth the reasons therefore.

**B. Reasonable Hourly Rates**

Forest Hills states that it will "leave it to the court to decide" if the rates claimed by Disability Rights Ohio are reasonable. (Doc. 53 at PageID 1252.) However, Forest Hills objects

that the Gibsons have not presented evidence as to the reasonable rates for IDEA litigation in the Cincinnati area. Forest Hills states that its attorney, Michael Fischer, has been handling IDEA litigation in Cincinnati area since the IDEA was enacted in 1990[3] and that he only charges $230 per hour.

A reasonable hourly rate is usually the prevailing market rate, defined as the rate that lawyers of comparable skill and experience can reasonably expect to command within the venue of the court of record. *Geier v. Sundquist,* 372 F.3d 784, 791 (6th Cir. 2004). The IDEA expressly states that attorney fees "shall be based on rates prevailing in the community in which the action or proceeding arose for the kind and quality of services furnished." 20 U.S.C. § 1415(i)(3)(C). "A district court may rely on a party's submissions, awards in analogous cases, state bar association guidelines, and its own knowledge and experience in handling similar fee requests." *Van Horn v. Nationwide Prop. & Cas. Ins. Co.*, 436 F. App'x 496, 498–99 (6th Cir. 2011).

The hourly rates sought by DRO in this case were established by attorney Kerstin Sjoberg-Witt, the Director of Advocacy and Assistant Executive Director at DRO. (Doc. 51-4 at PageID 1195–99.) Her starting point in setting the rates was the hourly rates approved for four Disability Rights Ohio attorneys in 2010 in the case of *Doe v. State of Ohio*, Case No. 2:91-cv-464, Doc. 193 at PageID 4567. (Doc. 51-4 at PageID 1198–99.) In *Doe*, Judge John D. Holschuh approved an hourly rate of $220 for Sjoberg-Witt, $190 for Boylan, and $95 for the paralegals. (Case No. 2:91-cv-464, at PageID 4567.) Sjoberg-Witt adjusted those rates in 2012 to account for inflation and an increasing amount of litigation handled. (Doc. 51-4 at PageID 1999.) The adjusted hourly rates were as follows:

---

[3] The IDEA's predecessor, the Education for All Handicapped Children Act, was enacted in 1975.

| Disability Rights Ohio Hourly Rates | |
| --- | --- |
| **Attorney's Years of Experience** | **Hourly Rate** |
| 1–2 | $190 |
| 3–5 | $220 |
| 6–10 | $250 |
| 11–15 | $270 |
| 16–20 | $290 |
| 21–25 | $310 |
| 26+ | $325 |

(Doc. 51-4 at PageID 1199.)  Judge Walter H. Rice approved of the adjusted hourly rates sought by DRO in 2013 in *Mooneyhan v. Husted*, Case No. 3:12-cv-379, Doc. 22 at PageID 196–203.  Judge Rice specifically approved the fees sought for attorneys with one-to-two, three-to-five, and six-to-ten years of experience.  (*Id.*, Doc. 22 at Page ID 196–203; *Id.*, Doc. 19-1 through 19-6.)

It is useful to compare the adjusted DRO fee schedule with the Rubin Committee rates, an attorney fees rubric developed in 1983.  The Committee arrived at the following categories and hourly rates:

| 1983 Rubin Committee Rates | |
| --- | --- |
| Paralegals | $37.91 |
| Young Associates (0–2 years) | $61.77 |
| Intermediate Associates (2–4 years) | $71.62 |
| Senior Associates (4–5 years) | $82.81 |
| Young Partners (6–10 years) | $96.39 |

11

| | |
|---|---|
| Intermediate Partners (11–20 years) | $113.43 |
| Senior Partners (21+ years) | $128.34 |

*See West v. AK Steel Corp. Ret. Acc. Pension Plan,* 657 F. Supp. 2d 914, 932 n. 4 (S.D.Ohio 2009). Judges in the Southern District of Ohio have applied the Rubin Committee rate with a 4% annual cost-of-living allowance to measure the reasonableness of fees requested. *Hunter v. Hamilton Cty. Bd. of Elections*, No. 1:10-cv-820, 2013 Wl 5467751, at *17 (S.D. Ohio Sept. 30, 2013); *Georgia–Pacific LLC v. Am. Int'l Specialty Lines Ins. Co.*, 278 F.R.D. 187, 192 (S.D. Ohio 2010).

The DRO attorney fees sought are less than the adjusted Rubin Committee rates:[4]

| COMPARISON OF DRO RATES TO RUBIN RATES | | | | |
|---|---|---|---|---|
| **Attorney/Paralegal** | **Requested Hourly Rate** | **Year Admitted** | **Years in Practice** | **Adjusted Rubin Rate** |
| Attorney Kristin Hildebrant | $310 | 1989 | 24 | $416.26 |
| Attorney Virginia Wilson | $310 | 1988 | 14–25[5] | $367.90+ |
| Attorney Kerstin Sjoberg-Witt | $270 | 2003[6] | 10 | $312.63 |
| Attorney Jason Boylan | $250 | 2007 | 6 | $312.63 |
| Paralegal Amanda Danko | $95 | n/a | n/a | $122.96 |
| Paralegal Christine Retherford | $95 | n/a | n/a | $122.96 |
| Paralegal Laura Bordeau | $95 | n/a | n/a | $122.96 |

---

[4] The Court is applying 4% compounded interest for 30 years. The Court also is basing the years in practice on 2013, the year the Court issued Judicial Review Order. (Docs. 51-4 through 51-10.)

[5] Wilson has been a licensed attorney for twenty-five years, but she spent eleven years working part-time or less. (Doc. 51-6 at PageID 1213–14.) Assigning her only fourteen years of experience, her Rubin Committee rate would be $367.90 per hour.

[6] Sjoberg-Witt graduated from law school in 2003 and then served as a judicial clerk. She does not state the year she was admitted into the bar to practice law. (Doc. 51-4 at PageID 1195.)

12

For these reasons, the Court holds that the hourly rates sought by the Disability Rights Ohio attorneys and paralegals are reasonable.

### C. Reasonable Hours Expended

Forest Hills contends that the attorney fees awarded to the Gibsons should be significantly lower than the $800,314.50. For example, Forest Hills states that "[v]irtually every page" of the 168-page billing record contains entries which lack sufficient detail to justify a fee award. (Doc. 53 at PageID 1244.) Attorneys who seek fees have an obligation "to maintain billing time records that are sufficiently detailed to enable courts to review the reasonableness of the hours expended" on the case. *Wooldridge v. Marlene Indus. Corp.*, 898 F.2d 1169, 1177 (6th Cir. 1990), *abrogated on other grounds by Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.,* 532 U.S. 598 (2001). However, Forest Hills identifies only sixteen entries on the 168-page billing report which purportedly are vague. (*Id.* at PageID 1244–45.) The Court has examined those sixteen entries and has determined that all but two are sufficiently detailed when examined in context. *See Imwalle v. Reliance Med. Prods., Inc.*, 515 F.3d 531, 554 (6th Cir. 2008) (stating that entries need not be explicitly detailed and must be read in context). Forest Hills similarly objects that DRO overstaffed the case by utilizing the services of four attorneys and three paralegals. Forest Hills does not support these objections, however, with specific examples where unreasonable duplicative services were rendered such the Court is able to make entry-by-entry deductions from the billing record.

The Court will not expend more of its time searching for vague or duplicative entries among the 168-page billing report. The Court notes that across-the-board reductions can be justified when overbilling has been established and entry-by-entry reductions are not practical. *See e.g.*, *Saint-Gobain Autover USA, Inc. v. Xinyi Glass N. Am., Inc.*, 707 F. Supp. 2d 737, 763–

13

65 (N.D. Ohio 2010); *Healthcall of Detroit, Inc. v. State Farm Mut. Auto. Ins. Co.*, 632 F. Supp. 2d 676, 685 (E. D. Mich. 2009); *Coulter v. State of Tenn.*, 805 F.2d 146, 152 (6th Cir. 1986). In this case, an across-the-board reduction is appropriate to account for the Gibsons' limited success on the merits and for other equitable reasons as discussed below. The across-the-board reduction taken below is sufficient to remedy any problems with vague or duplicative entries, especially in light of the fact that DRO voluntarily redacted more than 1,000 hours from the billing record before submitting it to the Court.

Reductions in the lodestar amount are appropriate to account for situations where a plaintiff achieves only partial or limited success. "If . . . a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount." *Hensley*, 461 U.S. at 436. "Where the plaintiff's claims are based on different facts and legal theories, and the plaintiff has prevailed on only some of those claims, . . . no fee may be awarded for services on the unsuccessful claim." *Tex. State Teachers Ass'n v. Garland Ind. Sch. Dist.*, 489 U.S. 782, 789 (1989) (internal quotation and citation omitted).

However, where the plaintiff's claims are based on the same facts and involve related legal theories, the analysis is more complex:

> [W]here the plaintiff's claims arise out of a common core of facts, and involve related legal theories . . . the most critical factor is the degree of success obtained . . . [and] the district courts should exercise their equitable discretion in such cases to arrive at a reasonable fee award, either by attempting to identify specific hours that should be eliminated or by simply reducing the award to account for the limited success of the plaintiff.

*Id.* at 789–90 (internal quotation and citations omitted). The district court may focus on the plaintiff's overall success where the claims are related and not examine the plaintiff's success on a strict claim-by-claim basis. *Imwalle*, 515 F.3d at 555 (citing *DiLaura v. Twp. of Ann Arbor*,

14

471 F.3d 666, 673 (6th Cir. 2006)). Furthermore, with related claims "the court may not reduce the initial figure by 'comparing the total number of issues in the case with those actually prevailed upon.'" *Phelan*, 8 F.3d at 374 (holding that the district court erred when it awarded plaintiff twenty-five percent of her attorney's fees because she technically succeeded on only one of four issues) (quoting *Hensley*, 461 U.S. at 435 n. 11). Stated differently, the Court should not make a "mechanical reduction[] in fees based on the number of issues on which a plaintiff has prevailed." *Imwalle*, 515 F.3d at 554 (citation omitted).

The Gibsons contend, and the Court agrees, that the claims upon which they succeeded, and those upon which they failed to succeed, are interrelated. The Gibsons asserted multiple theories upon which the IHO, the SLRO, and the Court could find that Chloe had been denied a free appropriate public education. The evidence required to prove each theory was overlapping and included the written IEPs and education records; the testimony of the Gibsons, Chloe's teachers and aides, and other Forest Hills School District officials; and the records and testimony of doctors and specialists who treated or examined Chloe. Accordingly, the Court will not attempt to reduce the fee award request based on a strict mechanical calculation of the percentage of claims raised upon which the Gibsons did not prevail.

The Court must formulate an award that provides a reasonable fee for the level of success achieved by the Gibsons. The Court finds that the Gibsons achieved significant, but limited, success on behalf of Chloe. Chloe was awarded compensatory educational services in two areas. First, pursuant to the IHO Decision, which was not properly appealed by Forest Hills, Chloe received 240 compensatory hours of reading instruction and 240 compensatory hours in math instruction. She also received new IEP goals in the areas of reading and math. Second, this Court awarded Chloe approximately 500 hours of transition services.

15

The fee award also must be reasonable in light of the complex nature of the case. IDEA cases are by their nature complex, requiring individualized determinations of a disabled child's particular deficits and needs, as well as the exhaustion of state administrative procedures prior to the filing of a federal action. *See e.g.*, 20 U.S.C. § 1414(d) (concerning the development of individualized education plans); 20 U.S.C. § 1415(i)(2)(A) (setting forth judicial review procedures); *Bd. of Educ. of Montgomery Cty. v. Brett Y.*, No. 97-1936, 1998 WL 390553, at *1 (4th Cir. June 26, 1998) (calling the statute complex); *M.C. v. Seattle Sch. Dist. No. 1*, No. C04-1459P, 2005 WL 1111207, at *5–6 (W.D. Wash. May 9, 2005) (stating that the development of educational plans involves complex legal procedures and educational issues); *Gross ex rel. Gross v. Perrysburg Exempted Village Sch. Dist.*, 306 F. Supp. 2d 726, 736 (N.D. Ohio 2004) (recognizing the "complexity and uniqueness" of IDEA cases). The multiple-stage procedures of the IDEA resulted in this case in formal state and federal proceedings that have continued for almost five years. Of note, the Court recognized the complexity of the IDEA at a May 17, 2012 conference when it gave the parties leave to exceed the standard page limitations for their merits briefs. The Court requested comprehensive briefs explaining the nature of Chloe's deficits, the requirements of the IDEA, and the technical terminology and standards discussed in the twenty-six volume state hearing transcript.

In addition to the inherent complexity of the IDEA, the parties here seemingly have disagreed about everything related to Chloe. They disagreed as to the nature of Chloe's disability, the least restrictive placement for her, the reading program method she should utilize, the amount of educational progress she achieved at Anderson High School, her ability to care for herself and to transition from one activity to another, and the types of services she required to transition to post-schooling endeavors. The Court recognizes that the IHO and SLRO held the

16

Gibsons responsible for exacerbating the parties' disputes and the Court accepts their factual finding in this regard.  However, the positions adopted by Forest Hills's attorney, particularly after the issuance of the Judicial Review Order, also contributed to the protracted nature of this litigation.[7]  The Court emphasizes these points not to justify awarding the Gibsons attorney fees in the amount of the lodestar calculation, but simply to respond to the suggestion by Forest Hills that the Gibsons' attorneys needlessly overcomplicated what should have been a simple case.

Nonetheless, the Court's award must reflect the fact that the success achieved by the Gibsons was limited in proportion to the total relief requested.  One of the Gibsons' primary contentions in this case was that Chloe should have been placed in the life skills classroom at Turpin High School.  The IHO, the SLRO, and this Court all disagreed and concluded that the multiple-disabilities classroom at Anderson High School was the appropriate least restrictive environment for Chloe.  It followed from that conclusion that Chloe had not been denied FAPE because she was denied access to the general education curriculum or because a general education teacher did not participate in the IEP formulation process.  Additionally, the Court found that Chloe was not denied FAPE solely because Forest Hills failed to conduct an assistive technology assessment or based on a lack of meaningful parental participation.  In fact, the Court found that the Gibsons had not established that Chloe's IEPs were inadequate to provide her with FAPE in any respect except as to transition services.  Even as to transition services, the Court

---

[7] Forest Hills's attorney did not actively engage in settlement discussions to determine an appropriate transition remedy for Chloe.  He appeared to regard settlement discussions as futile because Forest Hills intended to appeal the Court's decisions on the merits.  He then opposed the transition remedy requested by the Gibsons by motion, as was his right on behalf of Forest Hills.  However, his proposed alternative remedy was overly general.  He stated that *the Court* could "fashion an appropriate compensatory transition remedy" by ordering that Chloe participate in an *unspecified number* of transition assessments to be conducted by a public or private developmental disability agency *chosen by the Court*. (Doc. 43 at PageID 823–24.)  Similarly, here he objects to the Gibsons' fee calculation, but he did not undertake an entry-by-entry examination of the billing record nor suggest a procedure to calculate a reasonable fee.

awarded only approximately one-fourth of the hours of compensatory services which the Gibsons had requested.  (Doc. 49 at PageID 978–80.)

Also, the Court determined on April 10, 2012, early in the process of the federal litigation, that Forest Hills could not challenge the IHO's decision to grant new IEP goals and 480 hours of compensatory education in reading and math.  (*Id.* at PageID 86–87.)  No time billed by Disability Rights Ohio after that date was reasonably expended to pursue those successful claims.  Stated another way, the only merits success achieved by DRO on behalf of Chloe after April 10, 2012 was the award of the transition remedy.

In consideration of the above equitable factors, and in particular the limited success achieved, the Court reiterates that awarding the Gibsons attorney fees in the amount of $800,314.50 would be unreasonable.  The Court will not conduct an entry-by-entry examination of the billing record to reduce fees both because it would be impractical given the length of the billing record and because the claims upon which the Gibsons were unsuccessful overlap factually and legally with the claims upon which the Gibsons were successful.  The Court also is cognizant of the admonition against calculating a fee based on a strict proportional comparison of the successful claims versus the unsuccessful claims.  Nonetheless, an across-the-board reduction is authorized and appropriate.  The Court hereby finds that an award of attorney fees in the amount of $300,000 is reasonable to have enabled the Gibsons to attract competent legal counsel, but not to provide a windfall to Disability Rights Ohio for achieving partial success.

### III. CONCLUSION

For the foregoing reasons, Plaintiffs' Motion for Attorneys' Fees (Doc. 51) is hereby **GRANTED**.  The Court awards the Gibsons attorney fees in the amount of $300,000.

**IT IS SO ORDERED.**

 

S/Susan J. Dlott_____
Chief Judge Susan J. Dlott
United States District Court